### NATIONAL RAILWAY TIME SERVICE CO. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 6018.

Circuit Court of Appeals, Seventh Circuit.

Feb. 19, 1937.

Rayford W. Lemley, of Chicago, Ill., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to the Atty. Gen., for respondent.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

SPARKS, Circuit Judge.

This petition seeks to review a decision of the Board of Tax Appeals. It involves a deficiency in petitioner's income taxes for the period of January 1, to August 31, 1930, in the sum of $375.48.

The facts, which are not disputed, are in substance as follows: The taxpayer had been engaged in the wholesale jewelry business since its organization in 1916, and had always used an accrual method of accounting. It had an arrangement with a number of railroads whereby they deducted amounts from the wages of their employees to pay for merchandise which the employees were buying from retailers who had bought the merchandise from the taxpayer. The railroads remitted the collections thus made to the taxpayer, which credited those amounts to the respective retailers who sold the merchandise. The money thus collected belonged to the retailers who made the sales rather than to the taxpayer.

The taxpayer's experience was that some of the retailers did not promptly forward to it the necessary information with respect to the sales to enable it to credit to the proper retailer all of the amounts received from the railroads. Hence those amounts not credited for that reason were carried by the taxpayer in an account styled as "Lost Watch Order Accounts." The taxpayer attempted to acquire the necessary information to credit those items to the account of the proper retailers, and in most instances was able to do so. However, it recognized any valid claim of a retailer, regardless of the length of time that elapsed after the money was received. Its records showed that most of the remittances were claimed during the year in which they were received. The number of claims diminished the first year thereafter, and further diminished in the second year. The taxpayer, with the approval of the Treasury Department, had followed the practice of crediting to income all unclaimed remittances at the close of the second year following the year in which they were received. It followed this practice in 1930, and on December 31, 1930, it transferred from lost watch order accounts to income, the sum of $4,693.50.

At the end of August, 1930, the taxpayer became affiliated with another corporation, and filed a separate return for the period in controversy. A consolidated return was filed by the affiliated group for the remainder of the year. The taxpayer did not allocate any part of the amount transferred to income from the lost watch order accounts to the first eight months of that year.

Of the amount transferred to income by the taxpayer on December 31, 1930, the Commissioner allocated $3,129 to the first eight months of the year. It is upon that item that the claim for deficiency is based, and the Board of Tax Appeals sustained the claim.

The question presented is whether any portion of the unclaimed remittances should be included in the taxpayer's income for the first eight months of 1930.

In support of his affirmative answer to this question the Commissioner relies upon sections 41 and 141 (a) (b) of the Revenue Act of 1928 (26 U.S.C.A. §§ 41, 141 and notes), and the Treasury regulations thereunder. So far as pertinent they are as follows:

"§ 41. The net income shall be computed upon the basis of the taxpayer's annual accounting period, * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, *or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income.*"

Section 141 (a) grants the privilege of filing consolidated returns to an affiliated group of corporations upon the express condition that all the regulations with re-

spect thereto be consented to by said corporations. It further provides that the making of a consolidated return shall be considered as such consent. Section 141 (b) provides: "The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of· each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected *and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.*" (Italics in both sections supplied by the Commissioner.)

The Commissioner concedes that the pertinent regulations (Article 32, Regulations 75, under section 141) are a general restatement of the Commissioner's power and discretion under section 141 to properly apportion the income for the periods of affiliation and non-affiliation, so that the income for the period during which a corporation is a member of the group can be clearly and accurately determined. He further concedes that the regulation is not to be construed in such manner as to limit the statute, and that if it were so construed it would be invalid.

Under the statutes referred to, it is claimed by the Commissioner that he is vested with a wide discretion in computing, and adjusting the income of both individual taxpayers and corporations affiliated with other corporations so as to conform with what he regards as the proper method of reporting income. We do not question that discretion, nor the authorities which support it. The inquiry presented here, however, does not involve the Commissioner's computation and adjustment of conceded income. It goes back further than that and raises the question whether the Commissioner treated as income that which in fact was not income.

The money here in question was received by appellant as agent for the several retailers at various times in 1928. It was not petitioner's money, and under the applicable statutes of Illinois, with respect to limitations of actions (Smith-Hurd Ill. Stats. c. 83, § 16) those retailers could have recovered it at any time within five years from the time it was received. However, petitioner for many years prior to 1930 had voluntarily included in its income tax returns all such sums which were in its possession on December 31, and which had been received by it in the second preceding calendar year. That arrangement was approved by the Treasury Department during all the taxable years prior to 1930, and there is nothing in this record, or the argument of counsel, to indicate that the plan will not be acceptable in the future.

The Commissioner, however, argues that the consolidation in some manner authorizes him to alter the plan for 1930. We are unable to agree with this contention. If the collections made by petitioner were in fact income during the period from January 1, to September 1, 1930, then the argument would be sound, but the collections were made in 1928, and the only thing that made them income within the year 1930 was petitioner's voluntary act of December 31, 1930, and we think that act can not be reasonably considered as retroactive in its character. Prior to that time the collections were not income for any year, and no statute has been called to our attention which would authorize the Commissioner to treat them as petitioner's income prior to the last named date.

If the Commissioner relied upon petitioner's voluntary act of December 31, 1930, as his authority for treating the receipts of 1928 as income for 1930, we think he should have construed that act consistently with petitioner's intention and consistently with the interpretation which both he and petitioner had placed on similar acts of petitioner in the preceding years, that is to say that the receipts here involved did not become income until December 31, 1930; and that they were not allocable to the separate months of that year. The fact that petitioner kept its accounts on an accrual basis would make no difference under such construction.

The decision is reversed.